UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

RICHARD POWERS,

Plaintiff

V.

UNUM LIFE INSURANCE COMPANY OF AMERICA, UNUMPROVIDENT CORPORATION, AND ZIZIK, LASALLE & POWERS, P.C. GROUP LONG TERM DISABILITY PLAN,

Defendants

04 12418 DPW

MAGISTRATE JUDGE

CIVIL ACTION NO.

RECEIPT #
AMOUNT $
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE

**COMPLAINT**

**INTRODUCTION**

1. Plaintiff, Richard Powers (Mr. Powers), brings this action against Defendants, Unum Life Insurance Company of America ("Unum"), UnumProvident Corporation, and the Zizik, LaSalle & Powers, P.C. Long Term Disability Plan ("Plan"), for violation of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. " 1001 *et. seq*. (ERISA). Mr. Powers is a participant in the Plan, an ERISA welfare benefit plan whose claims administration is handled by Unum. The Plan is fully insured by a policy of insurance issued by Unum. The policy number is 393451-011.

2. This Complaint challenges the Defendants': 1) unreasonable and unlawful denial of Mr. Powers' long term disability ("LTD") income benefits despite the substantial medical evidence demonstrating Mr. Powers' qualifications for said benefits; 2) pattern of rejecting and/or ignoring the substantial evidence supporting Mr. Powers' total disability

pursuant to the terms of the Plan; 3) failure to provide Mr. Powers with a full and fair review of his claim; and 4) failure to provide a reasonable claims procedure that would yield a decision on the merits of Mr. Powers' claim.

3. Mr. Powers is filing this action to recover benefits due under the Plan, to enforce the present rights existing therein, to clarify rights under the terms of the Plan, and to recover costs and attorneys' fees as provided by ERISA.

**JURISDICTION**

4. This court has personal and subject matter jurisdiction over this case under 29 U.S.C. 1132(e)(2) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Plan is administered in this district.

**PARTIES**

5. Mr. Powers is a 51-year-old individual who currently resides in Wellesley, Massachusetts. Mr. Powers is a vested participant in an employee benefit plan, within the meaning of 29 U.S.C. § 1002(2)(7). Mr. Powers has standing to bring this action under 29 U.S.C. § 1132(a).

6. The defendant, Unum, is a for-profit corporation with its principal place of business at 2211 Congress Street, Portland, Maine. Unum transacts business in Massachusetts and underwrites the Plan under which Mr. Powers is suing. Unum is the party responsible for processing the claims made under the Plan and making a final determination as to Plan participants' eligibility for LTD benefits.

7. At all times relevant to the claims asserted in this Complaint, Unum purported to act as an ERISA claims fiduciary with respect to participants of the plan, generally, and specifically, with respect to Mr. Powers, within the meaning of ERISA.

8. The defendant, UnumProvident Corporation, is a for-profit corporation with its principal place of business at 1 Fountain Square, Chattanooga, TN 37402. UnumProvident Corporation conducts business in Massachusetts and is the holding company for Unum, the party responsible for insuring the Plan under which Mr. Powers is suing.

9. The Plan under which Mr. Powers is suing is a "long-term disability plan" issued by Unum to Zizik, LaSalle & Powers, P.C., a for-profit company with its principal place of business at One Hollis Street, Suite 400, Wellesley, Massachusetts. The policy number is 393451-011.

**STATEMENT OF FACTS**

**Insurance Entitlement, Definitions of Disability, Discretion**

10. At the time he became disabled with as a result of Post-Polio Syndrome ("PPS"), Mr. Powers was an attorney, partner, and shareholder at the law firm of Zizik, LaSalle & Powers, P.C. in Wellesley, Massachusetts.

11. As an employee of Zizik, LaSalle & Powers, P.C., Mr. Powers was entitled to LTD benefits under a contract of insurance between Zizik, LaSalle & Powers, P.C. and Unum.

12. Unum both funds and administers the Plan under which Mr. Powers is suing.

13. Under the terms of the Plan, neither Unum nor UnumProvident has discretionary authority to determine a claimant's eligibility for LTD benefits and to interpret the terms and provisions of the Plan.

14. Zizik, LaSalle & Powers does not have discretionary authority to determine a claimant's eligibility for LTD benefits and to interpret the terms and provisions of the Plan.

15. Under the terms of the Plan, Mr. Powers is entitled to receive 60% of his monthly earnings to a maximum benefit of $10,000 per month.

16. The maximum period of payment under the Plan is age 65.

17. Under the terms of the Plan, "disabled" is defined as:

    - You are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and

    - You have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

18. Under the terms of the Plan, "material and substantial duties" means duties that:

    - Are normally required for the performance of your regular occupation; and

    - Cannot be reasonably omitted or modified.

19. Under the terms of the Plan, "regular occupation" means the occupation you are routinely performing when your disability begins.

20. Except for the terms defined above, the Plan contains no other definition or explanation for the term "disability."

**Mr. Powers' Claim for LTD Benefits**

21. Mr. Powers presented a timely claim to Unum, asserting that he is an insured person, that he became totally disabled while insured, and that he is entitled under the Plan to LTD benefits for the period of time beginning on June 1, 2003, when Unum wrongfully denied his benefits, and continuing thereafter without interruption through to the present, and continuing in the future until he reaches the age of 65 or is no longer disabled.

**Onset of Disability and Diagnoses**

22. In December 1999, Mr. Powers began experiencing significant fatigue. In response, Mr. Powers' primary care physician, Dr. Jon Rothberg, referred Mr. Powers to an infectious disease specialist, Dr. Mark Drapkin, for consultation.

23. Following his examination of Mr. Powers, Dr. Drapkin suspected that Mr. Powers

suffered from PPS, and recommended that Mr. Powers see a PPS specialist. Subsequently, Mr. Powers saw Dr. Julie Silver, a world-renowned PPS expert at the Spaulding Rehabilitation Hospital in Framingham, Massachusetts.

24. Mr. Powers began treatment with Dr. Silver in August 2001. After conducting numerous exams and tests of Mr. Powers, Dr. Sliver certified Mr. Powers' diagnosis of PPS. Dr. Silver also prescribed Mr. Powers anti-depressant medication to rule out the possibility of depression. Dr. Rothberg had also previously ruled-out depression as the cause of Mr. Powers' symptoms. After Dr. Silver determined that depression was not the cause of his symptoms, she instructed Mr. Powers to discontinue the anti-depressant medication.

25. Between December 1999 and March 2003, when Mr. Powers ceased working, his fatigue steadily worsened. Mr. Powers attempted many accommodations to continue working following his diagnosis and the progression of his symptoms, including resting in the middle of day, taking work home, taking medication and curtailing his duties as a litigation attorney.

26. The disabling symptoms Mr. Powers experienced as a result of PPS included extreme mental and physical fatigue, pain, memory difficulties, and concentration limitations. These symptoms impeded Mr. Powers' ability to perform as a litigation attorney.

27. Beginning in September 2002, Dr. Silver recommended that Mr. Powers cease working in order to preserve his limited energy. In November 2002, Dr. Silver stated, ". . . it is my strong recommendation that Mr. Powers begin proceedings for total disability. He is not able to work at his current job and really can only work very minimally in the future if at all."

28. In January 2003, Dr. Silver reiterated her recommendation that Mr. Powers go out on

long-term disability, stating that he, "is really only able to work perhaps 2 hours a day at most."

29. In March 2003, Dr. Silver again stated that Mr. Powers was "completely and permanently disabled. His condition is progressive and his prognosis is poor with respect to being able to work. His major issues are memory and concentration. . . "

30. On November 6, 2003, Ms. Amy E. Vercillo CRC, LRC, CDMS, conducted a vocational review of Mr. Powers and his occupation. Following her review and conversations with Mr. Powers, Ms. Vercillo determined that Mr. Powers was vocationally disabled from performing his job as an attorney and would not meet the essential occupation demands of his position.

31. In order to cope with the symptoms of PPS, Mr. Powers sought treatment from a speech therapist to assist him with swallowing and memory problems, an occupational therapist to provide him with guidance for making workplace and home adaptations for PPS, and a physical therapist to assign him an exercise program to accommodate PPS.

32. Mr. Powers also sought treatment from Stephanie Machell, Psy. D., a psychologist at Spaulding, to assist him in dealing with the issues arising from his disability and ceasing his work as a litigation attorney, a career that Mr. Powers had worked and trained for his entire life. As part of this treatment, Drs. Machell and Silver recommended that Mr. Powers maintain his part-time teaching position at Boston College, where he had worked part-time for several years in addition to his law practice. Mr. Powers was capable of teaching part-time because the demands were minimal compared to that of a litigation attorney and his lecture material remained the same each year he taught the class.

33. Unfortunately, the treatment measures taken by Mr. Powers were ineffective in enabling

him to pursue his career as a litigation attorney. As a result, and under the recommendations of his treating physicians, Mr. Powers ceased working at Zizik, LaSalle & Powers, P.C. in February 28, 2003.

**Application for LTD Benefits**

34. Under recommendation from his doctor, Mr. Powers provided Unum notice on or about March 3, 2003, that he would be filing a claim for LTD benefits under his Plan.

35. In Mr. Powers' notice to Unum, he stated:

> This letter will serve as written notice that I have been diagnosed with Post-Polio Syndrome, a disability that has made it impossible for me to continue to perform the material and substantial duties of my occupation as a litigation attorney. This has been an extremely difficult decision for me, and I have done my best to avoid it and continue to work despite my disability. However, ongoing and severe problems, including fatigue, memory loss and impairment of concentration, coupled with the progressive nature of this disability have rendered me incapable of doing so.

36. On or about April 6, 2003, Mr. Powers submitted a claim for LTD benefits to Unum, indicating that he suffered from PPS and Sleep Apnea, diagnosed by Spaulding Rehabilitation Hospital in Framingham, Massachusetts.

37. On April 15, 2003, Mr. Powers engaged in a conversation with Robert Spellman a Customer Care Specialist at Unum and UnumProvident regarding his claim for benefits. During that conversation, Mr. Spellman informed Mr. Powers that John Monahan, a Customer Care Specialist at Unum and UnumProvident, was going to visit Mr. Powers to see how the company could "help [him]" and to explain the benefits under the policy.

38. On April 29, 2003, Mr. Monahan conducted an interview with Mr. Powers. Although Mr. Monahan spent approximately three to five minutes talking about the policy benefits and how Unum would hire a lawyer to assist Mr. Powers in obtaining Social Security

Disability Income benefits, the bulk of the two hour visit was spent questioning Mr. Powers regarding his symptoms, occupation, illness and subsequent disability. Selective portions of the information garnered by Mr. Monahan were later used by Mr. Spellman to justify Unum's denial of Mr. Powers' claim.

**Unum's Initial Denial of Mr. Powers' Claim For LTD Benefits**

39. On June 6, 2003, Unum informed Mr. Powers that it would require an additional thirty days to review his claim for benefits.

40. Sixty days later, and four months after Mr. Powers submitted his claim for benefits, on August 9, 2003, Unum denied Mr. Powers' claim in a letter authored by Mr. Spellman.

41. In his August 9, 2003 denial, Mr. Spellman determined that there was no evidence of Mr. Powers' progressive weakness, as noted by Dr. Silver. Mr. Spellman further asserted that Mr. Powers' claim lacked objective support for memory and concentration difficulties. In addition, Mr. Spellman determined that Mr. Powers' symptom of fatigue was present for a number of years and that it was not clear whether his fatigue worsened when Mr. Powers ceased working.

42. Mr. Powers' Plan does not require that he present objective support for or evidence of his symptoms or limitations.

43. Mr. Spellman provided Mr. Powers with two options in response to his denial: 1) to file a request for reconsideration with new information supporting Mr. Powers' disability; or 2) to file an appeal.

**Mr. Powers' Request for Reconsideration**

44. On November 13, 2003, Mr. Powers requested that Unum reconsider its denial of his claim for LTD benefits. In his request, Mr. Powers included narrative reports from Dr.

Silver, his treating physician for PPS; Ms. Carolyn Balinskas, his Speech-Language Pathologist; Dr. Stephanie Machell, his psychologist; and the vocational report completed by Ms. Vercillo.

45. In his request for reconsideration, Mr. Powers took the time to respond to Unum's justifications for denying his benefits. After responding to the specific issues raised by Unum in its denial letter, Mr. Powers wrote:

> Having addressed the specifics, I would like to take the opportunity to comment on the general nature of my disability. It would seem that in order to satisfy your definition of disability one would need to be at least bed ridden. Thankfully, I am not. By making a disability claim I am not representing that I cannot function as a human being whatsoever. Rather, I am telling you that I cannot perform the material and substantial duties of my regular occupation due to my medical condition. In fact, as you point out in your letter of August 9, 2003, the definition of "disability" under the subject policy relates to the question of whether "[I am] limited from performing the material and substantial duties of [my] regular occupation due to [my] sickness or injury." The medical records contained in your file and the reports previously submitted to Unum clearly establish the fact that I am disabled. . . .
>
> In our conversation, Mr. Monahan repeatedly made a statement to the effect "Unum does not want to pay for someone leaving work because they want a lifestyle change." To the extent that you think that is why I stopped working, you can rest assured that nothing could be further from the truth. First of all, if I were to choose another lifestyle, this is not the one I would choose. I was making a very comfortable living practicing law and found it very rewarding on an intellectual level. I had expected that the next ten years of practice would be financially rewarding and would assist in funding my retirement and the daunting costs that we face in connection with our children's college educations. My law partners had been very accommodating in allowing me to teach on the side and I practice out of an office in Falmouth in the summer so that I could spend the summer with my family. As my children grew older (I currently have two in college) and had less need for my time (or, in reality, have less time for me!), I anticipated that I would be working more, not less. In short, any suggestion that I stopped working for any reason other than the fact that it was necessary for health reasons and because I simply could not do the job, is wholly without merit.
>
> Similarly, there is no way that I would have put my family through the experience of seeing me go out on disability with all of the uncertainty, both health wise and financially, that goes along with doing so. Being considered "disabled" in any

sense of the word has been difficult for me. I stopped working reluctantly and only after I realized that I really had no choice.

46. Unum initially treated Mr. Powers' request for reconsideration as an appeal, sending the letter to the appeals department for review.

47. In response, the appeals department, in particular, Kristie Charette, sent Mr. Powers' request for reconsideration back to Mr. Spellman for consideration.

**Unum's Second Denial of Mr. Powers' Claim for LTD Benefits**

48. On January 2, 2004, Mr. Spellman upheld his August 2003 denial of Mr. Powers' claim for LTD benefits.

49. In particular, Mr. Spellman justified the denial of Mr. Powers' claim in part on the basis that depression had not been thoroughly investigated as the cause of Mr. Powers' symptoms. In so arguing, Mr. Spellman ignored the fact that depression was specifically excluded as the cause of Mr. Powers' symptoms by two physicians. Moreover, Mr. Spellman's statement regarding Mr. Powers' emotional response to questions regarding his disability and the loss of his law practice was not only normal, but expected, under the circumstances.

50. In the January 2004 denial, Mr. Spellman stated that Mr. Powers' work as a part-time teacher was not consistent with total disability. In fact, Mr. Powers' teaching takes less than three and one-half hours per week for Mr. Powers to complete.

51. Mr. Spellman ignored the fact that Mr. Powers' treating physicians recommended that Mr. Powers maintain his part-time teaching position at Boston College in order to cope with the emotional impact of leaving his law practice.

52. Unum's denial of Mr. Powers' claim for LTD benefits was based on reviews conducted by Dr. Frank Bellino, a Unum Medical Director and Vice President, and Unum Nurse

Angela Sandberg. A cursory review of a Unum summary of Mr. Powers' file was also conducted by Dr. Alan Neuren, a Unum Medical Director, prior to Unum's August 9, 2003, denial of benefits.

**Mr. Powers' Appeal of Unum's Decision to Deny LTD Benefits**

53. On March 15, 2004, Mr. Powers, through counsel, appealed Unum's decision to deny him LTD benefits.

54. Mr. Powers' appeal included affidavits supporting his total disability; narrative reports from his treating and examining physicians describing the basis for their conclusion that Mr. Powers was totally disabled; medical information regarding PPS to respond to Unum's erroneous understanding of the nature of the illness; an affidavit from his employer supporting his claim for benefits; a vocational review supporting Mr. Powers' functional limitations; and updated medical records.

55. On March 25, 2004, Kristie Charette, Lead Appeals Specialist for Unum, informed Mr. Powers' counsel that, ". . . we made a previous appeal determination on your client's claim. However, we will review this new information within the next 60 days to determine if the additional information will change our original decision."

56. On March 30, 2004, Mr. Powers' counsel informed Ms. Charette that Mr. Powers had only filed a request for reconsideration and that, to date, Unum had not rendered an appellate determination on Mr. Powers' claim.

57. On April 9, 2004, Unum informed Mr. Powers that they hoped to make a decision within 45 days of receiving the appeal and, under special circumstances, would make a determination no later than 90 days after receiving the appeal.

58. On April 13, 2004, Mr. Powers, through counsel, provided Unum with Mr. Powers'

updated medical records from Spaulding Rehabilitation Hospital for Unum's review.

59. On June 2, 2004, 79 days from the date of Mr. Powers' appeal, Unum informed Mr. Powers that it would need an extension of "up to 45 days" to make the decision on his claim for benefits.

60. Unum did not provide an explanation for its need for an additional 45 days to review Mr. Powers' claim.

61. On June 15, 2004, Mr. Powers' counsel submitted to Unum's medical department information regarding PPS research conducted by Dr. Richard Bruno. Dr. Bruno is the author of the book The Polio Paradox: What You Need to Know where he addresses the misconceptions regarding the cause and diagnosis of PPS. Notably, Mr. Powers' counsel pointed to Dr. Bruno's research on the mistaken labeling of the symptoms of PPS as those of depression. Mr. Powers' counsel further presented Unum with medical documentation on PPS from articles published by Dr. Bruno in the American Journal of Physical Medicine, Archives of Physical Medicine and Rehabilitation, American Journal of Medicine, and Annals of the New York Academy of Sciences. In addition, Mr. Powers' counsel provided Unum with the Social Security Administration's acknowledgement of the disabling nature of PPS.

62. On April 20, 2004, Mr. Powers provided Unum with updated independent medical documentation of his disability of PPS from Dr. Chiachen Hsu, a PPS expert at Spaulding. Dr. Hsu confirmed Dr. Silver's conclusion that Mr. Powers was totally disabled from performing the duties of his own occupation.

63. On August 17, 2004, Unum informed Mr. Powers that it expected to make an appellate decision on his claim within 7 to 10 days.

64. Unum did not render a determination on Mr. Powers' claim within 7 to 10 days.

**Unum's Refusal to Provide Mr. Powers with his Complete Disability Claim File**

65. On June 8, 2003, Mr. Powers requested from Ms. Charette a copy of his disability claim file. Mr. Powers was forced to request his file from Unum on several occasions before finally receiving his file, which was postmarked September 23, 2003.

66. On April 26, 2004, Mr. Powers' counsel received from Unum an updated copy of Mr. Powers' claim file. A yellow sticky note was affixed to the file, which read, " [check] for attorney client privilege docs. I pulled the 1/21/04 note to file."

67. On April 28, 2004, Mr. Powers' counsel wrote Ms. Charette informing her of the contents of the note. Mr. Powers' counsel stated that pursuant to ERISA, Mr. Powers was entitled to a full and fair review, which includes any information generated in the consideration of his claim for benefits. Accordingly, Mr. Powers' counsel requested the information referenced in the yellow note, including the "1/21/04 note to file.

68. On May 21, 2004, Mr. Powers' counsel, after no response from Unum, again requested a copy of the undisclosed 1/21/04 note.

69. On June 8, 2004, Mr. Powers' counsel requested, for the third time, the 1/21/04 note.

70. On June 14, 2004, Unum informed counsel for Mr. Powers that the 1/21/04 note was "attorney client privileged" and was therefore removed from Mr. Powers' copy.

71. Mr. Powers' counsel responded to this letter on July 23, 2004, informing Unum that under ERISA, attorney-client privileged information cannot be asserted by a plan fiduciary against a plan participant if the communication involves matters of plan administration.

72. On August 11, 2004, Unum informed counsel for Mr. Powers that it continued to believe

that attorney-client privilege information did not have to be disclosed to Mr. Powers.

73. On September 8, 2004, Mr. Powers' counsel sent Ms. Charette of Unum another request for Mr. Powers' claim file, highlighting that pursuant to ERISA:

> All internal rules, guidelines, protocols, etc. in the possession of Unum that purport to evaluate claims based on disabilities due to Mr. Powers' illness and symptoms (despite repeated requests) Mr. Powers has not received a copy of Unum's internal guidelines.

74. Unum did not respond to the September 8, 2004 letter.

75. To date, Unum has not disclosed to Mr. Powers the 1/21/04 correspondence that had been removed from the copy of his claim file.

**Unum's Final Denial of Mr. Powers' Claim for LTD Benefits**

76. On September 1, 2004, 170 days following the date of Mr. Powers' appeal, and 80 days after the conclusion of the internal appeal process, Unum informed Mr. Powers it was upholding its prior decision to deny him disability benefits. In its denial, Unum stated that Mr. Powers' complaints of fatigue, decreased memory, and decreased concentration, were not consistent with his daily activities, and that his impairment is not at a level which would preclude him from performing his occupation as an attorney.

77. Unum's denial of Mr. Powers' claim was based upon facts which were either untrue or misconstrued. Additionally, Unum's denial of Mr. Powers' claim was not based on all the information in the file.

78. Unum's final denial was based upon a paper review conducted by a Physical Medicine and Rehabilitation physician who is not a PPS expert and who did not examine Mr. Powers. In addition, the paper reviewer failed to review and to consider all the medical information included in Mr. Powers' claim.

79. Despite its ability to do so, Unum did not request that Mr. Powers undergo an

independent medical examination.

80. Clinical standards for evaluation of individuals suffering from PPS dictate that in-person clinical examinations are the best manner in which to evaluate the existence and progression of the condition.

81. The only independent vocational information in the file was rendered by Ms. Vercillo, who concluded that Mr. Powers lacked the functional ability to perform the duties of his own occupation.

**Summary**

82. Mr. Powers remains disabled to this day as a result of the debilitating symptoms of PPS.

83. Mr. Powers has exhausted his administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

84. The Defendants failed to provide Mr. Powers with a full and fair review of his claim for benefits.

85. Any discretion to which Defendants may claim it is entitled under the Plan is negated by its failure to provide Mr. Powers with an explanation as to its adverse action and a full and fair review of his claim for benefits.

86. The decision to deny Mr. Powers' benefits was wrongful, unreasonable, irrational, contrary to the substantial evidence, contrary to the terms of the Plan and contrary to law.

87. Unum was influenced by its financial conflict of interest, as both the administrator of the Plan and the payor of benefits thereunder, when it denied Mr. Powers' benefits.

88. UnumProvident was influenced by its financial conflict of interest, as both the administrator of the Plan and the payor of benefits thereunder, when it denied Mr. Powers' claim.

89. Due to the unlawful denial of benefits under ERISA, Mr. Powers has been deprived of his rightful long-term disability benefits.

90. Mr. Powers has also suffered emotional distress and an exacerbation of his physical condition as a result of Unum's actions.

91. Due to the unlawful denial of benefits under ERISA, Mr. Powers has lost the use of his long-term disability benefits.

92. Having exhausted the administrative procedures provided by the Defendants, Mr. Powers now brings this action.

**FIRST CAUSE OF ACTION**
**(Enforcement of Terms of Plan**
**Action for Unpaid Benefits)**
**(ALL DEFENDANTS)**

93. Mr. Powers realleges each of the paragraphs above as if fully set forth herein.

94. The Plan is a contract.

95. Mr. Powers has performed all of his obligations under the contract.

96. 29 U.S.C. § 1132(a)(1)(B) states that:

A civil action may be brought ---

(1) by a participant or beneficiary –

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

97. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

98. The Defendants unlawfully denied Mr. Powers' benefits in part by: (1) rejecting, without

any basis, the substantial evidence supporting Mr. Powers' claim for disability; and (2) denying Mr. Powers a full and fair review of their decision to deny his benefits.

99. In accordance with 29 U.S.C. §1132, Mr. Powers is entitled to be paid benefits under the Plan based upon his disabled status from and after February 2003, and continuing into the present.

100. The Defendants have refused to provide Mr. Powers with these disability benefits and is, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

101. As a direct and proximate result of this breach, Mr. Powers has lost the principal and the use of his rightful LTD benefits.

**SECOND CAUSE OF ACTION**
**(Attorneys' Fees and Costs)**
**(ALL DEFENDANTS)**

102. Mr. Powers realleges each of the paragraphs above as if fully set forth herein.

103. Under the standards applicable to ERISA, Mr. Powers deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

104. The Defendants have the ability to satisfy the award.

105. Mr. Powers' conduct of this action is in the interests of all participants suffering from physical conditions who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

106. The Defendants acted in bad faith in denying Mr. Powers benefits under the Plan.

107. The award of attorneys' fees against the Defendants will deter others acting under

similar circumstances.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1) Declare, adjudge and decree that Mr. Powers is entitled to ongoing LTD benefits as calculated under the terms of the Plan;

(2) Award Mr. Powers the full amount of unpaid benefits under the Plan to which he is entitled, together with such pre-judgment interest as may be allowed by law;

(3) Order that the Defendants make restitution to Mr. Powers in the amount of any losses sustained by Mr. Powers in consequence of the wrongful conduct alleged herein, together with prejudgment interest;

(4) Award Mr. Powers the costs of this action and reasonable attorneys' fees; and

(5) Award such other relief as the court deems just and reasonable.

Dated: November 12, 2004

Respectfully submitted for the Plaintiff,

By: ______________________

Mala M. Rafik
BBO No. 638075
ROSENFELD & RAFIK, P.C.
44 School Street, Suite 410
Boston, MA 02108
617-723-7470

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) Richard Powers v. Unum Life Insurance Company of America

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

___ I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

X II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.

*Also complete AO 120 or AO 121 for patent, trademark or copyright cases

___ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

___ IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

___ V. 150, 152, 153.

04 12418

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

N/A

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

YES ☐ NO X

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)

YES ☐ NO X

IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

YES ☐ NO X

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

YES ☐ NO X

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

YES X NO ☐

A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

EASTERN DIVISION ☐ CENTRAL DIVISION ☐ WESTERN DIVISION ☐

B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

EASTERN DIVISION X CENTRAL DIVISION ☐ WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME MALA M. RAFIK

ADDRESS ROSENFELD & RAFIK, P.C., 44 SCHOOL STREET, SUITE 410, BOSTON, MA 02108

TELEPHONE NO. (617) 723-7470

(Powers Category Form.wpd - 11/27/00)

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

RICHARD POWERS

**DEFENDANTS**

UNUM LIFE INSURANCE COMPANY OF AMERICA, UNUMPROVIDENT CORPORATION & ZIZIK, LASALLE & POWERS, P.C. GROUP LONG TERM DISABILITY PLAN

(b) County of Residence of First Listed Plaintiff ______
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant ______
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Mala M. Rafik
Rosenfeld & Rafik, P.C.
44 School Street, Suite 410
Boston, MA 02108
(617) 723-7470

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- X 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury — Med. Malpractice
☐ 365 Personal Injury — Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
X 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

x 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

The Plaintiff files this action under ERISA, 29 U.S.C. §1132(a) to recover disability benefits due him under his long-term disability plan administered by UnumProvident Corporation and Unum Life Insurance Company of America.

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $** CHECK YES only if demanded in complaint: **JURY DEMAND:** ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE November 12, 2004 SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______